JUDGE FURMAN

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Marky Kate Brennan (MK 5595)
mbrennan@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:      (212) 292-5391
*Attorneys for Plaintiff Ideavillage Products Corp.*

# 17 CV 9099

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IDEAVILLAGE PRODUCTS CORP., *Plaintiff* <br><br> v. <br><br> DONGGUAN OPETE YOGA WEAR MANUFACTURER CO., LTD.; DONGGUAN PRO FASHION ACTIVEWEAR CO., LTD.; ENJOYING LIFE TOP STORE – SHENZHEN STORE; EVERMATE (SHENZHEN) ELECTRONIC TECHNOLOGY CO., LTD. a/k/a EVERMATE INTERNATIONAL LTD.; HEALTHFAMILY STORE; HEBEI OSKY MEDICAL INSTRUMENT LIMITED COMPANY; HEBEI XIANCHI MACHINERY LEASING CO., LTD. a/k/a HEBEI QIANCHI MAHINERY EUIPMENT LEASING CO., LTD.; HENGSHUI RUNDE MEDICAL INSTRUMENTS CO., LTD.; HOARD STORE; JIANGSHAN YAPAI PLASTIC FACTORY; NINGBO LK IMP&EXP CO., LTD.; NINGBO WEALTHY INDUSTRY & TRADE CO., LTD.; OH MARKETS STORE; QINGDAO NEW LUCKY GARMENT &ACCESSORIES CO., LTD.; RYBACK – DESIGNED AND QUALITY; SHANGHAI BANNER IMP & EXP CORP.; SHAOXING SHANGYU KNITTING CO., LTD.; SHENZHEN DAYWONS TECHNOLOGY CO., | **CIVIL ACTION No. \_\_\_\_** <br><br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

LIMITED; SHENZHEN VEFOND
TECHNOLOGY CO., LTD.; SHIJIAZHUANG
WUYU TRADING CO., LTD.; WE ARE BEST
SELLING; YIWU COMEONE HOUSEHOLDS
GOODS CO., LTD. a/k/a YIWU COMEONE
HOUSEHOLD GOODS FACTORY; SHEJIANG
MAI FEI HOSIERY TECHNOLOGY CO., LTD.;
and ZHIDA STORE,
*Defendants*

Ideavillage Products Corp. ("Ideavillage" or "Plaintiff"), a New Jersey corporation, by
and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.      This action involves claims for trademark infringement of Plaintiff's federally
registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051
*et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§
1114(1)(a)-(b), 1116(d), and 1117(b)-(c); false designation of origin and unfair competition in
violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright
infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976,
17 U.S.C. §§ 101 *et seq.*; and related state and common law claims (the "Action"), arising from the
infringement of Plaintiff's Marks (as defined *infra*) and/or Copyright Works (as defined *infra*) by
Defendants Dongguan Opete Yoga Wear Manufacturer Co., Ltd., Dongguan Pro Fashion Activewear
Co., Ltd., Enjoying Life Top Store – Shenzhen Store, Evermate (Shenzhen) Electronic Technology
Co., Ltd. a/k/a Evermate International Ltd., healthfamily Store, Heibei Osky Medical Instrument
Limited Company, Hebei Xianchi Machinery Leasing Co., Ltd. a/k/a Hebei Qianchi Mahinery
Euipment Leasing Co., Ltd., Hengshui Runde Medical Instruments Co., Ltd., Hoard Store, Jiangshan
Yapai Plastic Factory, Ningbo LK Imp&Exp Co., Ltd., Ningbo Wealthy Industry & Trade Co., Ltd.,
Oh Markets Store, Qingdao New Lucky Garment &Accessories Co., Ltd., Ryback – Designed and

Quality, Shanghai Banner Imp & Exp Corp., Shaoxing Shangyu Yuanbo Knitting Co., Ltd., Shenzhen Daywons Technology Co., Limited, Shenzhen Vefond Technology Co., Ltd., Shijiazhuang Wuyu Trading Co., Ltd., We are best selling, Yiwu ComeOn Household Goods Co., Ltd. a/k/a Yiwu ComeOn Household Goods Factory, Zhejiang Mai Fei Hosiery Technology Co., Ltd., and Zhida Store (hereinafter collectively referred to as "Defendants"), including without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying offering for sale and/or selling unlicensed, infringing and/or counterfeit versions of Plaintiff's authentic Copper Fit Products (as defined *infra*).

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. and the Copyright Act, 17 U.S.C. §§ 101 et seq.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.   This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.     Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district, and/or otherwise avail themselves of the

privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, for example:

a. Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with the Digital Marketplaces (as defined *infra*) held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts") on the Alibaba.com, AliExpress.com and DHGate.com online marketplace platforms, through which consumers in the U.S., including New York, can view Defendants' Online Accounts (as defined *infra*), communicate with Defendants regarding their listings for Infringing Products (as defined *infra*) and place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b. Upon Information and belief, Defendants are sophisticated sellers operating commercial businesses through their respective User Accounts through which Defendants offer for sale and/or sell Infringing Products in wholesale quantities at significantly below-market prices to consumers worldwide ("Defendants' Online Accounts"), including to consumers in the U.S., and specifically in New York.

c. Upon information and belief, a majority of Defendants' Online Accounts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S., which make up significant percentages of Defendants'

total revenues (which are estimated, in several cases, to be in the millions of dollars).

d.  Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e.  Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Infringing and/or Counterfeit Products.

f.  Upon information and belief, Defendants are aware of Plaintiff, its Copper Fit Products, and its Marks and Copyright Works, and are aware that their infringing actions, as alleged herein, are likely to cause injury to Plaintiff in the U.S.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in this judicial district.

## THE PARTIES

5.      Plaintiff, Ideavillage Products Corp. is a New Jersey corporation, having a principal place of business at 155 Route 46 West, Wayne, NJ 07470 ("Ideavillage" or "Plaintiff").

6.      Upon information and belief, Defendant Dongguan Opete Yoga Wear Manufacturer Co., Ltd. is a merchant on Alibaba.com, at https://opetesports.en.alibaba.com, where it offers for sale and/or sells Infringing Products and with a principal place of business at 1910, Tenglong Building, No. 82, Hongfu Road, Hongfu Community, Nancheng District, Dongguan, Guangdong, China (Mainland).

7.      Upon information and belief, Defendant Dongguan Pro Fashion Activewear Co, Ltd. is a merchant on Alibaba.com, at https://activewear.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at 306, XingYe Financial Building, No. 31, NanCheng GuanTai Road, Dongguan City, Guangdong, China (Mainland) 523017.

8.      Upon information and belief, Defendant Enjoying Life Top Store – Shenzhen Store is a merchant on AliExpress.com, at https://aliexpress.com/store/2196062, where it offers for sale and/or sells Infringing Products and with a principal place of business in Shanghai, China.

9.      Upon information and belief, Defendant Evermate (Shenzhen) Electronic Technology Co., Ltd. a/k/a Evermate International Limited is a merchant on Alibaba.com, at https://szevermate.en.alibaba.com/, where it offers for sale and/or sells Infringing Products and with a principal place of business at Building B, Fenda Science Innovation Park, Sanwei Community, Xixiang Street, Bao'an District, Shenzhen, Guangdong, China (Mainland).

10.     Upon information and belief, Defendant healthfamily Store is a merchant on AliExpress.com, at https://aliexpress.com/store/1425326, where it offers for sale and/or sells Infringing Products and with a principal place of business in China (Mainland).

11.     Upon information and belief, Defendant Hebei Osky Medical Instrument Limited Company is a merchant on Alibaba.com, at https://osky-medical.en.alibaba.com/, where it offers for sale and/or sells Infringing Products, and with a principal place of business at No. 18, Changan Street, Hengshui, Hebei, China (Mainland).

12.     Upon information and belief, Defendant Hebei Xianchi Machinery Leasing Co., Ltd. a/k/a Hebei Qianchi Mahinery Euipment Leasing Co., Ltd. is a merchant on Alibaba.com, at

https://xianchimachine.en.alibaba.com/, where it offers for sale and/or sells Infringing Products and with a principal place of business at Room 2-1-1502, Rongyuan Community, Intersection of Chengjiao Street and Gongnong Rd., Qioxi Area, Shijiazhuang, Hebei, China (Mainland).

13.     Upon information and belief, Defendant Hengshui Runde Medical Instruments Co., Ltd. is a merchant on Alibaba.com, at https://hbrunde.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Xuzhangtun Village, Anping County, Hengshui, Hebei, China (Mainland).

14.     Upon information and belief, Defendant Hoard Store is a merchant on AliExpress.com, at https://www.aliexpress.com/store/2789128, where it offers for sale and/or sells Infringing Products and with a principal place of business in Shenzhen, Guangdong, China.

15.     Upon information and belief, Defendant Jiangshan Yapai Plastic Factory is a merchant on Alibaba.com, at https://jssyapai.en.alibaba.com/, where it offers for sale and/or sells Infringing Products and with a principal place of business at 1113, Bldg. 3, Wante Business Center, Ningbo, Zhejiang, China (Mainland).

16.     Upon information and belief, Defendant Ningbo LK Imp&Exp Co., Ltd. is a merchant on Alibaba.com, at https://nblk.en.alibaba.com, where it offers for sale and/or sells Infringing Products and with a principal place of business at Floor 3, No. 179, Keji Road, Yinzhou Dist., Ningbo, Zhejiang, China (Mainland).

17.     Upon information and belief, Defendant Ningbo Wealthy Industry & Trade Co., Ltd. is a merchant on Alibaba.com, at https://nbwealthy.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Xincheng Village, Wuxiang Town, Yinzhou Dist., Ningbo, Zhejiang, China (Mainland).

18.    Upon information and belief, Defendant Oh Markets Store is a merchant on AliExpress.com, at https://www.aliexpress.com/store/2820002, where it offers for sale and/or sells Infringing Products and with a principal place of business in China (Mainland).

19.    Upon information and belief, Defendant Qingdao New Lucky Garment &Accessories Co., Ltd. is a merchant on Alibaba.com, at https://qdyhc.en.alibaba.com, where it offers for sale and/or sells Infringing Products and with a principal place of business at No. 1102, World Trade Center, No. 888, Heshan Road, Jimo, Shandong, China (Mainland).

20.    Upon information and belief, Defendant Ryback – Designed and Quality is a merchant on AliExpress.com, at https://aliexpress.com/store/2067025, where it offers for sale and/or sells Infringing Products and with a principal place of business in China (Mainland).

21.    Upon information and belief, Defendant Shanghai Banner Imp Exp Corp. is a merchant on Alibaba.com, at https://bannerind1.en.alibaba.com, where it offers for sale and/or sells Infringing Products and with a principal place of business at No. 2585, Hunan Road, Pudong New Dist., Shanghai, China (Mainland).

22.    Upon information and belief, Defendant Shangyu Yuanbo Knitting Co., Ltd. is a merchant on Alibaba.com, at https://bonypony.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Xiao'ao, Dongguan Village, Fenghui Town, Shangyu Dist., Shaoxing, Zhejiang, China (Mainland).

23.    Upon information and belief, Defendant Shenzhen Daywons Technology Co., Limited is a merchant on Alibaba.com, at https://daywons.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Room 701, Building 6c, Zhongtiancaihongcheng North Area, Renmin 6th Rd., Danshui Street, Huiyang Area, Huizhou, Guangdong, China.

24.     Upon information and belief, Defendant Shenzhen Vefond Technology Co., Ltd. is a merchant Alibaba.com, at https://vefond.en.alibaba.com/, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Room 110, Building B, Zhigu Science Park, Xixiang Street, Baoan District, Shenzhen, Guangdong, China (Mainland).

25.     Upon information and belief, Defendant Shijiazhuang Wuyu Trading Co., Ltd. is a merchant Alibaba.com, at https://wybrace.en.alibaba.com/, where it offers for sale and/or sells Infringing Products, and with a principal place of business at No. 1104, Lehuicheng Bldg. C, No. 11, Zhongshan East Road, Changan District, Shijiazhuang, Hebei, China (Mainland).

26.     Upon information and belief, Defendant We are best selling is a merchant AliExpress.com, at https://aliexpress.com/store/1032078, where it offers for sale and/or sells Infringing Products, and with a principal place of business in China (Mainland).

27.     Upon information and belief, Defendant Yiwu ComeOn Household Goods Co., Ltd. a/k/a Yiwu ComeOn House Goods Factory is a merchant Alibaba.com, at https://comeonchina.en.alibaba.com/, where it offers for sale and/or sells Infringing Products, and with a principal place of business at Shop 70765, Market Area 5, Yiwu International Trade City, Futian St., Yiwu, Jinhua, Zhejiang, China (Mainland).

28.     Upon information and belief, Defendant Zhejiang Mai Fei Hosiery Technology Co., Ltd. is a merchant Alibaba.com, at https://mainasi.en.alibaba.com, where it offers for sale and/or sells Infringing Products, and with a principal place of business at No. 18, Chunhui Road, Beiyuan Industrial Zone, Yiwu, Zhejiang, China (Mainland).

29.     Upon information and belief, Defendant Zhida Store is a merchant AliExpress.com, at https://www.aliexpress.com/store/2667149, where it offers for sale and/or sells Infringing Products, and with a principal place of business in China (Mainland).

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Consumer Products

30.     Plaintiff is a leading developer, producer, marketer, and distributor of quality, innovative consumer products. Plaintiff promotes and sells its products through national direct response television advertising commonly called "As Seen On TV" ("ASOTV"). Plaintiff also promotes and sells its ASOTV products at the retail level at well-known mass retail outlets, including, without limitation: Wal-Mart, Target Stores, Bed Bath & Beyond, Toys R Us, Rite-Aid, CVS and Walgreens; through catalog companies; online, through its own website and its retail customers' websites; as well as through a network of international distributors, among other channels of trade.

31.     Ideavillage is among the most well-known, well-respected sources of many of the most popular and most successful ASOTV products sold in the United States.

32.     One of its most recent successful products is a line of copper-infused compression garments, each targeted to different body parts and designed to help relieve muscle and joint soreness and pain which are marketed and sold under the distinctive COPPER FIT trademark and include the sub-brands: Copper Fit Knee or Elbow Sleeves, Copper Fit Pro Knee or Elbow Sleeves, Copper Fit Back Pro, and Copper Fit Socks ("Copper Fit Products").

33.     Plaintiff's line of Copper Fit Products has achieved great success since its introduction in August 2014, due in part to a significant marketing campaign lead by hall of fame and Super Bowl champion quarterback Brett Favre.

34.     While Ideavillage has gained significant common law trademark and other rights in its Copper Fit Products, through use, advertising, and promotion, Ideavillage has also protected its valuable rights by filing for and obtaining federal trademark registrations.

10

35.     Ideavillage is the owner of U.S. Trademark Registration No. 4,676,558 for the wordmark "COPPER FIT" for goods in Class 25, U.S. Trademark Reg. No. 4,774,235 for the wordmark "COPPER FIT" for a wide variety of goods in Class 24, and U.S. Trademark Registration No. 5,301,755 for the wordmark "COPPER FIT" for a wide variety of goods in Class 25 (hereinafter collectively referred to as the "Marks"). True and correct copies of the certificates of registration for the Marks are attached hereto as **Exhibit A** and incorporated herein by reference.

36.     The Marks are currently in use in commerce in connection with the Copper Fit Products. The Marks were first used in commerce on or before the dates of first use as reflected in the respective registrations attached hereto as **Exhibit A**.

37.     In addition, Ideavillage also owns both registered and unregistered copyrights related to the Copper Fit Products.

38.     Ideavillage is the owner of the following U.S. Copyright Registrations (true and correct copies of the below detailed U.S. Copyright registration certificates for the Copyright Works are attached hereto as **Exhibit B** and incorporated herein by reference):

a.   U.S. Copyright Reg. No. VA 1-914-217 covering the Copper Fit Elbow Sleeve packaging and instructions, as depicted beneath:



b.     U.S. Copyright Reg. No. VA 1-914-211 covering the Copper Fit Knee

Sleeve packaging and instructions, as depicted beneath:



c.    U.S. Copyright Reg. No. VA 1-945-394 covering the Copper Fit Socks packaging, as depicted beneath:



d.    U.S. Copyright Reg. No. VA 1-948-947 covering the Copper Fit Back Pro

packaging, as depicted beneath:



39.    U.S. Copyright Reg. No. VA 1-914-217, U.S. Copyright Reg. No. VA 1-914-211,

U.S. Copyright Reg. No. VA 1-945-394, and U.S. Copyright Reg. No. VA 1-948-947 are

collectively referred to as the "Copyright Works").

40.    In addition to the channels described above, Ideavillage also markets the Copper Fit Products on its own website, https://www.ideavillage.com ("Ideavillage Website"), as well as markets and sells the Copper Fit Products through its Copper Fit Product websites: https://www.getcopperfit.com; https://www.copperfitback.com; https://www.copperfitpro.com; and https://www.getenergysocks.com ("Copper Fit Websites") (the Ideavillage Website and the Copper Fit Websites are hereinafter collectively referred to as, "Plaintiff's Websites"). Printouts from Plaintiff's Websites and images of the Copper Fit Products are attached hereto as in **Exhibit C** and incorporated herein by reference.

41.    The Copper Fit Products, specifically the Copper Fit Knee or Elbow Sleeves (two sleeves), Copper Fit Pro Knee or Elbow Sleeves (two sleeves), Copper Fit Back Pro, and Copper Fit Socks (two pairs), retail for $19.99.

42.    Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Copper Fit Products, Marks and Copyright Works.

43.    The success of the Copper Fit Products is due in part to Plaintiff's marketing and promotional efforts.    These efforts include advertising and promotion through television, Plaintiff's Websites, retailer websites and other internet-based advertising, print, participation in trade shows, among other efforts domestically and abroad.

44.    Plaintiff's success is also due to its use of the highest quality materials and processes in making the Copper Fit Products.

45.    In addition, Plaintiff owes a substantial amount of the success of the Copper Fit Products to its consumers, and word of mouth buzz that its consumers have generated.

46.     As a result of Plaintiff's efforts, the quality of Plaintiff's products, and the word-of-mouth buzz generated by its consumers, the Marks, Copyright Works, and Copper Fit Products have become prominently placed in the minds of the public.  Members of the public have become familiar with Plaintiff's Marks, Copyright Works, and Copper Fit Products, and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.

47.     Ideavillage has gone through great lengths to protect its interests to the Copper Fit Products, Marks, and Copyright Works.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Marks or Copyright Works without the express permission of Plaintiff.

### The Digital Marketplaces and Defendants' Online Accounts

48.     Alibaba.com, AliExpress.com and DHgate.com are global online marketplaces, which allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide, and specifically to consumers residing in the U.S., including New York (hereinafter collectively referred to as the "Digital Marketplaces").

49.     As the leaders of China's e-commerce and digital retail market, the Digital Marketplaces have generated hundreds of billions in sales worldwide.[1]  International markets, including the U.S., make up a significant percentage of the Digital Marketplaces' sales.  For example, in the last fiscal year, revenue from international retail sales grew by 25% on

---

[1]*See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

AliExpress.com to $342 million and 15% on Alibaba.com to $841 million.[2] The press has reported that the growth in sales on AliExpress.com has resulted from an increase in the number of buyers, particularly from the U.S., as well as other large countries like Russia and Brazil.[3] Additionally, according to *Business Insider*, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[4]   Further, DHgate.com offers 25 million consumer products from 1.2 million suppliers for sale on its platform and attributes over half of its sales to U.S. buyers alone.[5]

50.   As recently addressed in the *Wall Street Journal*, *Fortune*, and the *New York Times*,[6] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the Digital Marketplaces[7], an astronomical number of counterfeit and infringing products are offered for sale and sold on the Digital Marketplaces at a rampant rate.

---

[2] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales*, DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales

[3] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[4] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

[5] *See* Nona Tepper, *U.S. buyers account for half the sales on Hong Kong-based wholesale site DHgate.com*, DIGITALCOMMERCE360, (Jun. 22, 2015), https://www.internetretailer.com/2015/06/22/us-buyers-account-half-sales-dhgatecom.

[6] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes*, N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[7] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba*, MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

51.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their Online Accounts on the Digital Marketplaces.

52.     Through their Online Accounts, Defendants offer for sale and/or sell consumer products, including Infringing Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

## Defendants' Wrongful and Infringing Conduct

53.     Particularly in light of Plaintiff's success with its popular ASOTV products, as well as the reputation it has gained, Plaintiff and its Copper Fit Products have become targets for unscrupulous individuals and entities who wish to take capitalize on the goodwill, reputation and fame Plaintiff has amassed in its Copper Fit Products, Marks and the works embodied in the Copyright Works.

54.     Plaintiff investigates and enforces against such activity, and through such efforts, learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling products bearing or used in connection with one or more of the Marks and/or Copyright Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Marks and/or Copyright Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Marks and/or Copyright Works, and/or products that are identical or confusingly or substantially similar to Copper Fit Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers (including those located in the state of New York) through Defendants' Online

Accounts. Printouts of listings for Infringing Products from Defendants' Online Accounts are included in **Exhibit D** attached hereto and incorporated herein by reference.

55.     Defendants are not, and have never been authorized by Plaintiff or any of its authorized agents to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell any Copper Fit Products or to use Plaintiff's Marks and Copyright Works, or any marks or artwork that are confusingly or substantially similar to the Marks or Copyright Works.

56.     Defendants' Infringing Products are nearly indistinguishable from Plaintiff's Copper Fit Products with only minor variations that no ordinary consumer would recognize.

57.     Plaintiff retained New Alchemy Limited ("NAL"), a company that provides trademark infringement research services, to investigate and research manufacturers, wholesalers, retailers, and/or third-party merchants offering for sale and/or selling Infringing Products on the Digital Marketplaces.

58.     During its investigation, NAL identified Defendants as offering for sale and/or selling Infringing Products and contacted Defendants through their respective Online Accounts expressing interest in placing a bulk order for Infringing Products and inquiring about methods of payment. NAL also often requested the respective Defendant's e-mail addresses. Printouts of NAL's conversations with each of the Defendants are included in **Exhibit D** attached hereto and incorporated herein by reference.

59.     During its communications with Defendants, NAL specified a shipping address located in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages, order forms, and/or pro forma invoices for the Infringing Products reflecting that Defendants agreed to ship Infringing

Products to the New York Address are included in **Exhibit D** attached hereto and incorporated herein by reference.

60.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Infringing Products through their respective Defendants' Online Accounts, accepting payment for such Infringing Products in U.S. Dollars through various payment processing services, and that each Defendant provides shipping and/or has actually shipped Infringing Products to the U.S., including to customers located in New York. NAL's findings are supported by Defendants' listings for Infringing Products, their communications with NAL, and/or the checkout pages, order forms, and/or pro forma invoices for the Infringing Products which are included in **Exhibit D** attached hereto and incorporated herein by reference.

61.     For example, below on the left is an image of one of Plaintiff's Copper Fit Products. Depicted beneath on the right is Defendant Enjoying Life Top Store – Shenzhen Store's ("Enjoying Life") Counterfeit Product currently being offered for sale and/or sold through its AliExpress.com Online Accoount, https://aliexpress.com/store/2196062, ("Enjoying Life Online Account") under the listing title "Wholesale 50 Pcs/Pack Sports Wrister **Copper Fit** Infused Knee Compression Sleeve Brace Joint Pain Knee Protect Sport Accessories" (emphasis added) (the "Enjoying Life Infringing Listing"). The Enjoying Life Infringing Listing is using one of Plaintiff's Marks, or a confusingly similar mark, on the packaging and/or product images for the Counterfeit Product ("Enjoying Life Counterfeit Product"), as well as featuring and/or incorporating one or more of Plaintiff's Copyright Works, or substantially similar artwork, on the descriptions and/or product images for the Enjoying Life Counterfeit Product. The Enjoying Life Counterfeit Product is virtually identical to Plaintiff's Copper Fit Product and features and/or incorporates one or more of Plaintiff's Marks and one or more of Plaintiff's Copyright

Works. It is indisputable that the Enjoying Life Counterfeit Product is designed to confuse and mislead consumers into believing they are purchasing Plaintiff's Copper Fit Products or that the Enjoying Life Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Marks and Copyright Works.

| **AUTHENTIC** | **COUNTERFEIT** |
|:---:|:---:|
|  |  |

62.     NAL has confirmed that Enjoying Life offers shipping to New York, and a screenshot from the Enjoying Life Infringing Listing, as depicted below, confirms that Enjoying Life offers "Free Shipping to the United States via DHL":



63.     By way of an additional example, below on the left is an image of one of Plaintiff's Copper Fit Products. Depicted beneath on the right is Defendant Hoard Store's ("Hoard Store") Counterfeit Product currently being offered for sale and/or sold through its AliExpress.com Online Account, https://www.aliexpress.com/store/2789128, ("Hoard Store Online Account") under the listing title "Pain Relief Belt Weight Loss Slimming Wrap Lower Spin **Copper Fit** Black Pro Weightloss Remedy 28-39 inch Waist" (emphasis added) (the "Hoard Store Infringing Listing"). The Hoard Store Infringing Listing is using one of Plaintiff's Marks, or a confusingly similar mark, on the packaging and/or product images for the Counterfeit Product ("Hoard Store Counterfeit Product"), as well as featuring and/or incorporating one or more of Plaintiff's Copyright Works, or substantially similar artwork, on the descriptions and/or product images for the Hoard Store Counterfeit Product. The Hoard Store Counterfeit Product is virtually identical to Plaintiff's Copper Fit Product and features and/or incorporates one or more of Plaintiff's Marks and one or more of Plaintiff's Copyright

Works.  It is indisputable that the Hoard Store Counterfeit Product is designed to confuse and mislead consumers into believing they are purchasing Plaintiff's Copper Fit Products or that the Hoard Store Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Marks and Copyright Works.

**AUTHENTIC**                              **COUNTERFEIT**

64.    NAL confirmed that Hoard Store offers shipping to New York, and a screenshot from the Hoard Store Infringing Listing, depicted below, confirms that Hoard Store has sold Counterfeit Products to the U.S.:



65.    By way of a final example, below on the left is an image of one of Plaintiff's Copper Fit Products. Depicted beneath on the right is Defendant Shijiazhuang Wuyu Trading Co., Ltd.'s ("Wuyu") Counterfeit Product currently being offered for sale and/or sold through its Alibaba.com Online Account, https://wybrace.en.alibaba.com/, ("Wuyu Online Account") under the listing title "**Copper Fit** Ankle Socks Compression socks (2 Pair), Black/White, Small/Medium" (emphasis added) (the "Wuyu Infringing Listing").   The Wuyu Infringing Listing is using one of Plaintiff's Marks, or a confusingly similar mark, on the packaging and/or product images for the Counterfeit Product ("Wuyu Counterfeit Product"), as well as featuring and/or incorporating one or more of Plaintiff's Copyright Works, or substantially similar artwork, on the descriptions and/or product images for the Wuyu Counterfeit Product.   The Wuyu Counterfeit Product is virtually identical to Plaintiff's Copper Fit Product and features and/or incorporates one or more of Plaintiff's Marks and one or more of Plaintiff's Copyright Works.   It is indisputable that the Wuyu Counterfeit Product is designed to confuse and mislead consumers into believing they are purchasing Plaintiff's Copper Fit Products or that the Wuyu Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Marks and Copyright Works.

**AUTHENTIC**                                      **COUNTERFEIT**




66.     NAL confirmed that Wuyu offers shipping to New York, and a screenshot from the Wuyu Infringing Listing, depicted below, confirms that Wuyu repeatedly has shipped products into the U.S.:

67.    By these dealings in Infringing Products (including, without limitation: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendants have violated Plaintiff's exclusive rights in its Marks and/or Copyright Works, and have used images and designs that are confusingly and/or substantially similar to, identical to, and/or constitute counterfeiting and/or infringement of Plaintiff's Marks and Copyright Works in order to confuse consumers into believing that such Infringing Products are Copper Fit Products and aid in the promotion and sales of their Infringing Products. Defendants' conduct began long after Plaintiff's adoption and use of its Marks and Copyright Works, after Plaintiff obtained the U.S. registrations for the same, as alleged above and after Plaintiff's Copper Fit Products and Marks became well-known to the purchasing public.

68.    Prior to and contemporaneous with their actions alleged herein, Defendants had knowledge of Plaintiff's ownership of its Marks and Copyright Works, and of the fame and incalculable goodwill associated therewith, and of the popularity and success of the Copper Fit Products, and in bad faith adopted Plaintiff's Marks and Copyright Works.

69.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, Plaintiff's Marks, Copyright Works, and Copper Fit Products.

70.    Defendants' dealings in Infringing Products, as alleged herein, has caused, and will continue to cause, confusion, mistake, economic loss and has, and will continue to deceive consumers, the public, and the trade with respect to the source or origin of Defendants'

Infringing Products, thereby causing consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

71.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited Plaintiff's Marks; infringed Plaintiff's Copyright Works; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiff's expense.

72.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act,
15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)))**

73.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     Ideavillage is the exclusive owner of all right and title to the Marks.

75.     Ideavillage has continuously used its Marks in interstate commerce since at least as early as August 27, 2014 (U.S. Trademark Reg. No. 4,676,558) and May 7, 2015 (U.S. Trademark Registration No. 4,774,235).

76.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Marks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the Marks and/or used spurious designations that are identical with, or substantially indistinguishable, from one or more of the Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and/or

sale of Counterfeit Products.

77.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Marks, through their participation in such activities

78.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

79.     Defendants' unauthorized use of Plaintiff's Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiff's Marks.

80.     Defendants' actions constitute willful counterfeiting of Plaintiff's Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

81.     As a direct and proximate result of Defendants' illegal actions alleged herein,

Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation, and its valuable rights in and to Plaintiff's Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Marks.

82.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

83.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.     Plaintiff has continuously used its Marks in interstate commerce since at least as early as August 27, 2014 (U.S. Trademark Reg. No. 4,676,558) and May 7, 2015 (U.S. Trademark Registration No. 4,774,235).

85.     Plaintiff, as the owner of all right, title and interest in and to the Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

86.     Defendants were at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Marks.

87.     Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Copper Fit Products and/or related products bearing Plaintiff's Marks into the stream of commerce.

88.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Marks and/or which are identical or confusingly similar to the Marks

89.     Defendants knowingly and intentionally reproduced, copied, and colorably imitated the Marks and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings, and/or advertisements used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Defendants' Infringing Products.

90.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Marks.

91.     Defendants' egregious and intentional use of Plaintiff's Marks in commerce on or in connection with Defendants' Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Copper Fit Products or are otherwise associated with, or authorized by Plaintiff.

92.     Defendants' actions have been deliberate and committed with knowledge of

Plaintiff's rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, mistake, and deception.

93.     Defendants' continued, knowing and intentional use of Plaintiff's Marks without Plaintiff's consent or authorization, constitutes intentional infringement of Plaintiff's federally registered Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

94.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to Plaintiff's Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Marks.

95.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

96.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     Plaintiff, as the owner of all right, title, and interest in and to the Marks, have standing to maintain an action for false designation of origin and unfair competition under the

Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

98.    Plaintiff's Marks are inherently distinctive and/or have acquired distinctiveness.

99.    Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of Plaintiff's Marks and Copyright Works, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Infringing Products, with the intent to cause confusion, cause mistake, and deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Copper Fit Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed, or licensed by Plaintiff, and/or that Defendants are affiliated, connected, or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Marks and Copyright Works, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

100.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Copper Fit Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of Plaintiff's Marks and Copyright Works, Defendants have traded off the extensive goodwill of Plaintiff and its Copper Fit Products and did in fact induce, and intends to, and will continue to induce customers into

purchasing Defendants' Infringing Products, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

101.    Defendants knew, or by the exercise of reasonable care, should have known, that their adoption and commencement of, and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of Plaintiff's Marks and Copyright Works would cause confusion, mistake, or deception among purchasers, users, and the public.

102.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Copper Fit Products and its Marks and Copyright Works.

103.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Copper Fit Products and by depriving Plaintiff of the value of its Marks and Copyright Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's Marks and Copyright Works.

104.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and

infringing actions as alleged herein, and all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

105.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

106.    Plaintiff is the exclusive owner of the Copyright Works.

107.    Defendants had actual notice of Plaintiff's exclusive rights in and to the Copyright Works.

108.    Defendants did not attempt and failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiff's Copper Fit Products and/or Copyright Works.

109.    Without permission, Defendants knowingly and intentionally reproduced, copied and displayed Plaintiff's Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products which bear such Copyright Works, or artwork that is, at a minimum, substantially similar to Plaintiff's Copyright Works.

110.    Defendants' unlawful and willful actions as alleged herein, constitute infringement of Plaintiff's Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Copyright Works in violation of 17 U.S.C. § 501(a).

111.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be

proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

112.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

113.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

114.    Through Defendants' unlawful, unauthorized, and unlicensed use of Plaintiff's Marks and/or Copyright Works on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in Infringing Products which are identical and/or confusingly or substantially similar to Plaintiff's Copper Fit Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

115.    Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially misleads, or has a tendency to deceive and materially mislead, the consuming public and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law §§ 349.

116.    As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

117.    Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements, and attorneys' fees.

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

118.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

119.    Without the authorization of Plaintiff, Defendants have used Plaintiff's Marks and/or Copyright Works and/or marks, and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to Plaintiff's Marks and/or Copyright Works in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly or substantially similar to Plaintiff's Copper Fit Products, causing confusion, mistake, and deceiving consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

120.    Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law § 350.

121.    As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which they have no adequate remedy at law.

122.    Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiff is entitled to enjoin

Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

123.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its Copper Fit Products to induce and did induce, and intends and will continue to induce customers to purchase their Infringing Products, thereby directly competing with Plaintiff. Such conduct has permitted, and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

125.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion, cause mistake, and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

126.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the

Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

127.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and their competitive position while benefiting Defendants.

128.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been, and will continue to be, deprived of substantial sales of its Copper Fit Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been, and will continue to be deprived of the value of its Marks and Copyright Works as commercial assets, in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

129.     As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages, and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

### EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

130.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

131.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

132.     Defendants' retention of monies gained through its deceptive business practices,

infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of its federally registered Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C.

§ 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of Plaintiff's Copyright Works under 17 U.S.C. § 501(a);

F.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of Plaintiff's Copyright Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

        i.  manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing and/or Counterfeit Products;

ii.  directly or indirectly infringing in any manner any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks or Copyright Works;

iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works to identify any goods or services not authorized by Plaintiff;

iv.  using any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Marks and Copyright Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products.

v.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported,

exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff.

vi.  engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Infringing Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiff;

viii.  engaging in any other act in derogation of Plaintiff's rights;

ix.  secreting, destroying, altering, removing, or otherwise dealing with the Infringing Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products;

x.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Infringing Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' Online Accounts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to accounts associated with or utilized by any Defendant or any Defendant's

Online Accounts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts") and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi. from secreting, concealing, transferring, disposing of, withdrawing, encumbering, or paying any of Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court

xii. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

xiii. instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xii) above; and

L.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation Plaintiff's Marks or Copyright Works, or bear any marks that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works;

M.   For an order of the Court requiring that Defendants deliver up for destruction to

Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation Plaintiff's Marks or Copyright Works, or bear any marks that are confusingly or substantially similar to Plaintiff's Marks and Copyright Works pursuant to 15 U.S.C. § 1118.

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

P.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.      For Plaintiff's reasonable attorneys' fees;

R.      For all costs of suit; and

S.      For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: November 21, 2017                    Respectfully submitted,

                                            EPSTEIN DRANGEL LLP

BY: _____
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Mary Kate Brennan (MK 5595)
mbrennan@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Ideavillage Products Corp.*